**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ASMODEE GROUP, ) | |
| ) | Case No.  25-cv-2753 |
| Plaintiff, ) | |
| ) | Judge |
| v. ) | |
| ) | |
| THE INDIVIDUALS, CORPORATIONS, LIMITED ) | |
| LIABILITY COMPANIES, PARTNERSHIPS AND ) | |
| UNINCORPORATED ASSOCIATIONS IDENTIFIED ) | |
| ON SCHEDULE "A", ) | |
| ) | |
| Defendants. ) | |

## <u>COMPLAINT</u>

Plaintiff ASMODEE GROUP ("ASMODEE" or "Plaintiff"), through undersigned counsel, hereby complains of the Individuals, Corporations, Limited Liability Companies, Partnerships and Unincorporated Associations identified in Schedule A attached hereto (collectively, "Defendants"), and hereby alleges as follows:

### JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets consumers in the United States, including Illinois, through at least the fully interactive

commercial Internet stores operating under the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of Plaintiff's trademarks. Each of the Defendants has targeted sales to Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accepts payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## INTRODUCTION

3.       This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Plaintiff's federally registered trademarks (the "Counterfeit Products").

4.       The Defendants create numerous Defendant Internet Stores and design them to appear to be selling genuine Plaintiff's products, while selling inferior imitations of Plaintiff's products. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting

2

of Plaintiff's registered trademarks, as well as to protect unknowing consumers from purchasing unauthorized SPOT IT! products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

5. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District. In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

### THE PLAINTIFF

6. Plaintiff ASMODEE is a French company with its principal place of business at 18, Rue Jacqueline Auriol, Quartier Villaroy, 78280 Guyancourt, France.

7. Plaintiff is in the business of developing, marketing, selling and distributing SPOT IT! products. Originally released in 2009, the game DOBBLE was developed by game designer Denis Blanchot. DOBBLE is published and sold by ASMODEE through its publishing studio Zygomatic and it has been sold under the brand name SPOT IT! in the United States for nearly a decade. It is a card game in which players must find symbols in common between two drawn cards. Any two cards always share one, and only one, matching symbol. Quick and easy to learn, DOBBLE and SPOT IT! are popular with consumers of all ages. ASMODEE has partnered with other brand owners to develop specially licensed variations of its game under both the DOBBLE and SPOT IT! brands. It was the United Kingdom's best-selling game in 2018 and 2019. Plaintiff is the official source of SPOT IT! products:

https://shop.asmodee.com/

3

8.      Plaintiff is the owner of U.S. Trademark Registration No. 3,847,543 for the "SPOT IT" word mark in international class 28; No. 5,511,443 for the "SPOT IT!" word and design mark in international class 28; No. 5,651,873 for the "SPOT IT!" design mark in international classes 9, 16, 28 and 41; No. 5,658,407 for the "DOBBLE" word and design mark in international classes 9, 16, 28 and 41; and No. 5,802,853 for the "SPOT IT!" word and design mark in international classes 9, 16 and 41 (Collectively, the "SPOT IT! Trademarks").

9.      These Trademark Registrations are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the marks are attached as Exhibit 1.

10.      The registrations for the SPOT IT! Trademarks constitute prima facie evidence of the validity thereof and of Plaintiff's exclusive right to use the SPOT IT! Trademarks pursuant to 15 U.S.C. § 1057(b).

11.      The SPOT IT! Trademarks qualify as famous marks, as that term is used in 15 U.S.C. §1125 (c)(1) and have been continuously used and never abandoned.

12.     The SPOT IT! Trademarks are and have been the subject of substantial and continuous marketing and promotion by Plaintiff.  Plaintiff has and continues to widely market and promote the SPOT IT! Trademarks in the industry and to consumers.  Plaintiff's promotional efforts include — by way of example, but not limitation — website and social media sites, and point of sale materials.

13.     Plaintiff's SPOT IT! Trademarks are distinctive when applied to Plaintiff's products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Whether Plaintiff manufactures the products itself or licenses others to do so, Plaintiff has ensured that products bearing its Trademarks are manufactured to the highest quality standards.  Plaintiff's SPOT IT! Trademarks have achieved fame and recognition, which has only added to the inherent distinctiveness of the marks.  As such, the goodwill associated with Plaintiff's SPOT IT! Trademarks is incalculable and of inestimable value to Plaintiff.

14.     Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the SPOT IT! Trademarks. As a result, products bearing the SPOT IT! Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff. Examples of Plaintiff's products sold under its Registered Trademarks include:

| Legitimate Product | Infringing Product |
|---|---|
|  |  |
|  |  |

## THE DEFENDANTS

15.     Defendants are individuals and business entities who, upon information and belief, primarily reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Illinois and in this Judicial District, through the operation of fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit SPOT IT! products to consumers within the United States, including Illinois and in this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

16.     The success of the SPOT IT! brand has resulted in its counterfeiting.  Plaintiff has identified numerous online marketplace accounts and marketplace listings on platforms such as PayPal, Etsy, Fruugo, Wish, DHgate, Alipay, Alibaba, Walmart, Temu and Qoo10, including the Defendant Internet Stores, which were offering for sale, selling, and importing counterfeit SPOT IT! products to consumers in this Judicial District and throughout the United States.  Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2021 was over $3.3 billion. According to a 2021 study on the impact of the sale of fraudulent goods entitled "The Counterfeit Silk Road - Impact of Counterfeit Consumer Products Smuggled into the United States" (the "2021 study"), Internet websites like the Defendant Internet Stores are also estimated to contribute to over 653,000 lost jobs for legitimate businesses and broader economic damages such as lost wages in an amount over $36 billion and a loss of federal and state tax revenue of over $13.5 billion every year.

17.     Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine SPOT IT! products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards and PayPal, Etsy, Fruugo, Wish, DHgate, Alipay, Alibaba, Walmart, Temu and Qoo10.  Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the

illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal, Etsy, Fruugo, Wish, DHgate, Alipay, Alibaba, Walmart, Temu and Qoo10 logos.

18.     Plaintiff has neither licensed nor authorized Defendants to use the SPOT IT! Trademarks, and none of the Defendants are authorized retailers of genuine SPOT IT! products.

19.     Upon information and belief, Defendants also deceive unknowing consumers by using the SPOT IT! Trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for SPOT IT! products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Store listings show up at or near the top of relevant search results and misdirect consumers searching for genuine SPOT IT! products. Further, Defendants utilize similar illegitimate SEO tactics to propel new online marketplace accounts to the top of search results after others are shut down.  As such, Plaintiff also seeks to disable the Defendant Internet Stores that are the means by which the Defendants could continue to sell counterfeit SPOT IT! products.

20.     Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the online marketplace accounts are incomplete, contain randomly typed letters, or fail to include cities or states. Other online marketplace accounts use privacy services that conceal the owner's identity and contact information. Upon information and belief, Defendants regularly create new websites

and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

21.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective online marketplace accounts. In addition, the counterfeit SPOT IT! products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit SPOT IT! products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same online marketplace account patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

22.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands

sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. The 2021 study indicated that the Internet has fueled explosive growth in the number of small packages of counterfeit goods shipped through the mail and express carriers. This growth closely correlates to the growth of the ecommerce industry which now make up 15.4% of all retail transactions as reported by the Census Bureau of the U.S. Department of Commerce.

23.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal, Etsy, Fruugo, Wish, DHgate, Alipay, Alibaba, Walmart, Temu and Qoo10 accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal, Etsy, Fruugo, Wish, DHgate, Alipay, Alibaba, Walmart, Temu and Qoo10 transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal, Etsy, Fruugo, Wish, DHgate, Alipay, Alibaba, Walmart, Temu and Qoo10 accounts to primarily China-based bank accounts outside the jurisdiction of this Court.

24.     Defendants, with neither authorization nor license from Plaintiff, have knowingly and willfully used and continue to use the SPOT IT! Trademarks in connection with the advertisement, distribution, offering for sale, and sale of counterfeit SPOT IT! products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois and, on information and belief, each Defendant has offered to sell counterfeit SPOT IT! products into the United States, including Illinois.

25.     Defendants' use of the SPOT IT! Trademarks in connection with the advertising, distribution, offering for sale, and sale of counterfeit SPOT IT! products, including the sale of counterfeit SPOT IT! products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I

## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

26.     Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-25 of this Complaint.

27.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered SPOT IT! Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. SPOT IT! Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiff's products provided under the SPOT IT! Trademarks.

28.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the SPOT IT! Trademarks without Plaintiff's permission.

29.     Plaintiff ASMODEE GROUP is the registered owner of the SPOT IT! Trademarks (U.S. Registration Nos. 3,847,543; 5,511,443; 5,651,873; 5,658,407; and 5,802,853).

30.     The United States Registrations for the SPOT IT! Trademarks (Exhibit 1) are in full force and effect.  Upon information and belief, Defendants have knowledge of Plaintiff's rights in the SPOT IT! Trademarks and are willfully infringing and intentionally selling

counterfeit products using the SPOT IT! Trademarks. Defendants' willful, intentional, and unauthorized use of the SPOT IT! Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

31.     Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

32.     The injuries and damages sustained by Plaintiff has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit SPOT IT! products.

33.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known SPOT IT! Trademarks.

## COUNT II

## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

34.     Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-33 of this Complaint.

35.     Defendants' promotion, marketing, offering for sale, and sale of counterfeit SPOT IT! products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit SPOT IT! products by Plaintiff.

36.     By using the SPOT IT! Trademarks in connection with the sale of counterfeit SPOT IT! products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit SPOT IT! products.

37.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit SPOT IT! products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

38.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III

## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

## (815 ILCS § 510/1, et seq.)

39.     Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-38 of this Complaint.

40.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit SPOT IT! products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine SPOT IT! products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

41.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, et seq.

42.     Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill.  Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using Plaintiff's SPOT IT! Trademarks or any confusingly similar trademark or name in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product or is not authorized by Plaintiff to be sold in connection with Plaintiff's SPOT IT! Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine product or any other product produced by Plaintiff that is not Plaintiff's or is not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under its SPOT IT! Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' counterfeit products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d. further infringing Plaintiff's SPOT IT! Trademarks and damaging Plaintiff's reputation and goodwill;

e.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale including Plaintiff's SPOT IT! Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof; and

f.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts or any online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit products;

2)  That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through f, above;

3)  Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as PayPal, Etsy, Fruugo, Wish, DHgate, Alipay, Alibaba, Walmart, Temu and Qoo10, social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, and web hosts for the Defendants' Online Marketplace Accounts, shall:

a.  disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit products using Plaintiff's SPOT IT! Trademarks including any accounts associated with the Defendants listed in Schedule A; and

b.  disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit products using Plaintiff's SPOT IT! Trademarks;

4)    That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's SPOT IT! Trademarks are increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5)    In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of its Trademarks;

6)    That Plaintiff be awarded its reasonable attorneys' fees and costs; and

7)    Award any and all other relief that this Court deems just and proper

Respectfully submitted,

Dated: March 17, 2025

By:    s/Michael A. Hierl
       Michael A. Hierl (Bar No. 3128021)
       William B. Kalbac (Bar No. 6301771)
       Robert P. McMurray (Bar No. 6324332)
       John Wilson (Bar No. 6341294)
       Hughes Socol Piers Resnick & Dym, Ltd.
       Three First National Plaza
       70 W. Madison Street, Suite 4000
       Chicago, Illinois 60602
       (312) 580-0100 Telephone
       (312) 580-1994 Facsimile
       mhierl@hsplegal.com

       Attorneys for Plaintiff
       ASMODEE GROUP

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that a true and correct copy of the foregoing

Complaint was filed electronically with the Clerk of the Court and served on all counsel of

record and interested parties via the CM/ECF system on March 17, 2025.


   s/Michael A. Hierl